IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 19, 2002

## STATE OF TENNESSEE v. ERNEST WILLIE MAYS

**Direct Appeal from the Circuit Court for Dickson County**
**No. CR5043     Allen Wallace, Judge**

---

**No. M2001-02446-CCA-R3-CD - Filed August 23, 2002**

---

The defendant, Ernest Willie Mays, pled guilty to sale of cocaine, a Class C felony, and was sentenced as a Range I, standard offender to five years in the Tennessee Department of Correction. He appeals his sentence, arguing that it is excessive and that the trial court erred in (1) refusing to consider that less restrictive measures than incarceration had not been tried unsuccessfully, (2) not applying any mitigating factors, (3) finding that the offense constituted a criminal enterprise, and (4) considering the fact that he had four children out of wedlock.  We affirm the sentence imposed by the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID G. HAYES and ROBERT W. WEDEMEYER, JJ., joined.

Didi Christie, Brownsville, Tennessee (on appeal), and William B. Lockert, III, District Public Defender (at trial), for the appellant, Ernest Willie Mays.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Dan M. Alsobrooks, District Attorney General; and Suzanne M. Lockert, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

The defendant was convicted of selling crack cocaine to a confidential informant, the sale occurring on June 18, 1999.  He was not indicted for this offense until April 26, 2000, presumably because of the need to protect the identity of the informant.

At the September 6, 2001, sentencing hearing, Catherine Stringfield,[1] the probation officer who prepared the defendant's presentence report, testified that the defendant did not supply all of the requested information and, in fact, did not show up for his second meeting with her. She was unable to reach him by telephone because the cellular telephone number he gave her was not a working number. She attempted a home visit, but no one was there and she received no response to the business card she left in the defendant's mailbox. She said the defendant had denied committing the offense, and she had to quote verbatim his statement regarding the offense in her report because of his failure to show up for the second meeting. In that statement, the defendant said:

> I feel their's [sic] more that need[s] to be said to me[.] The charges I'm facing are nothing to me[,] pills, cocain[e], weed, rocks, are all drugs[.] If your [sic] not seeing this be sold how are you to tell [whether] it's one or the other[?] This is nothing to false education guess on.

Ms. Stringfield said that the defendant had prior convictions for theft and failure to appear and had other charges pending. He dropped out of high school in the tenth grade and had not maintained steady employment. He admitted that he had recently used marijuana and had experimented with "pills." When she asked the defendant about his four children and their support, the defendant said that his girlfriend worked and that he "sometimes" took care of the children while she worked. Ms. Stringfield was unable to verify whether the defendant supported his children. In her opinion and based upon her experience, the defendant "would not succeed on probation."

Dickson County Vice Officer Zack Humphreys testified that he and other officers videotaped the drug transaction between the defendant and the confidential informant on June 18, 1999, and identified the defendant as the person who sold the informant $20 worth of crack cocaine. The videotape was entered into evidence.

The twenty-year-old defendant testified that he was currently incarcerated on new charges for "VOP, possession for resale." When asked several times if he sold cocaine to the confidential informant, as he had been charged, the defendant repeatedly gave replies which were argumentative but nonresponsive, finally replying, after being ordered to do so by the trial court, "Haven't I done already confessed to that? . . . I confessed last week to that. . . . Yes." The defendant admitted that he committed the instant offense while on bond for his three circuit court cases.[2]

---

[1] Ms. Stringfield is referred to as "Katherine Springfield" in the transcript of the sentencing hearing. However, we note that the presentence report, which she prepared, reflects her signature as "Catherine Stringfield"; therefore, we will use that spelling of her name.

[2] The Dickson County Circuit Court judgments entered on January 20, 2000, for these offenses reflect that the defendant was convicted of evading arrest, escape, and assault, with the offenses occurring on November 25, 1998, November 9, 1998, and November 9, 1998, respectively. The trial court imposed concurrent sentences of eleven months

(continued...)

As to why he did not show up for his second meeting with Ms. Stringfield, the defendant explained, "I wasn't even thinking about it. . . . I didn't know the date or nothing. Do you know what I'm saying? She probably told me, I just wasn't thinking about it." He said that Ms. Stringfield could not reach him through his cellular telephone because he did not have any "minutes" on it and that he told Ms. Stringfield of this fact.

The defendant testified that his last job was at Porcelain Industries, but it had "probably been like a year" since he worked there and he had only worked there "[a] couple of weeks." He said he quit that job because he "just didn't like" it. He said he had worked sporadically with relatives mowing grass during the summer, earning approximately $20 per day. He explained that he had not worked before the summer months because that was his "option." When asked if he allowed his girlfriend to support him, the defendant replied, "That's cool with me."

The defendant admitted that he uses marijuana and drinks alcohol "[e]very now and then" but denied that he had ever been in a substance abuse treatment program. The defendant said, if placed on probation, he would complete a treatment program and would be able to find a job because he had experience working in restaurants and "plants." He admitted that he had been on probation "more times than a few" but said he had followed all instructions without any problems.

The defendant said, at the sentencing hearing, that he lived with his girlfriend, Melissa Burgess, and their two-year-old twin daughters and four-year-old daughter, that he and "Nancy" had a three-year-old son, that he does not regularly pay child support for any of his children, and that Ms. Burgess was receiving government assistance and food stamps. He testified that his support of his three daughters consisted of "[w]henever I get money, I do what I can."

At the conclusion of the hearing, the trial court sentenced the defendant to five years in the Department of Correction and denied alternative sentencing:

> Well I've considered for the purpose of judge sentencing I've considered all of the mitigating factors that are set out in 40-35-113. I've considered the enhancement factors that have been listed here, and the others set out in 40-35-124.
>
> Now I don't believe I have ever in my life seen a man's attitude like [the defendant's] is. In the past, I guess since he's been of age, he's had one real job that lasted for a period of two weeks and he quit because he just didn't like it out at Porcelain Industries.

---

[2](...continued)
and twenty-nine days for each conviction, with all but sixty days suspended and the balance to be served on probation. Thus, these offenses were committed before the defendant's selling crack cocaine, resulting in the instant charge, and were disposed of before he was indicted for this charge.

His criminal conduct in this case is done just for livelihood. He has entered a criminal enterprise rather than work. I think the same provisions are set forth in – you have cited State versus Ashby, that's really been overturned by State versus Darryl Hooper. It's where the criminal enterprise is done for greed or livelihood. I think the Court can consider that.

I looked at this tape here. He's in an area there and the only inference that you can draw from this tape here, he was just running an enterprise there of selling crack cocaine just like they do at 7-Eleven except at 7-Eleven you've got to go in and buy Cokes or something and there he's running curb service.

I watched him and asked him questions myself and listened to him just to see if I could find some kind of redeeming factor because his cases in the past have been misdemeanor cases. I have to start as you know with a minimum of three years and determine whether – with the presumption what the state has proven to up that sentence.

I think the fact that it was such a criminal enterprise, that he's just so blatant about it, he's got four kids in this world the best I can remember by three [sic] different women the way I remember the testimony, never been married to any of them, not supporting them. He said he made about $20.00 a day sometimes cutting grass. He may have cut some grass, but he was trying to make a living by criminal enterprise selling crack cocaine.

Now we mentioned whether or not some alternative sentencing such as probation or community corrections. He's got a charge that was brought about while he was on bond awaiting another charge. Now while this charge is pending, he's got a charge of possession for resale pending. He's got to face those. He said well let him get out here and go to work. In this day and time he's going to have so much time in court, I doubt he can hold a job really if he wanted one because he's got these cases coming in court.

I've considered all of that. I don't think that alternative sentencing is appropriate for [the defendant], especially after watching him, listening to him and seeing his attitude here in court, the fact that he was doing this for a livelihood rather than to work.

## ANALYSIS

The defendant argues that his five-year sentence is excessive and that the trial court erred in sentencing him by: (1) failing to consider that less restrictive measures than incarceration had not been tried unsuccessfully with him; (2) not applying any mitigating factors; (3) finding that the offense constituted a criminal enterprise; and (4) considering the fact that he had four children out of wedlock. He requests that his sentence "be modified to probation or community corrections."

### I. Standard of Review

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103 and -210; State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App. 1987).

The party challenging the sentences imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169.

### II. Length of Sentence

The defendant pled guilty to sale of cocaine, a Class C felony. The sentence range for a Class C felony as a Range I, standard offender is three to six years. Tenn. Code Ann. § 40-35-112(a)(3). In determining the appropriate sentence for a felony conviction, the sentencing court, if there are enhancement factors but no mitigating factors, may set the sentence above the minimum in that range but still within the range. See Tenn. Code Ann. § 40-35-210(d) (Supp. 1999); State v. Boggs, 932 S.W.2d 467, 475 (Tenn. Crim. App. 1996). There is no mathematical formula of evaluating the

enhancement factors to calculate the appropriate sentence. See generally Boggs, 932 S.W.2d at 475. "Rather, the weight to be afforded an existing factor is left to the trial court's discretion so long as the court complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record." Id. at 475-76 (citations omitted).

Citing State v. Hooper, 29 S.W.3d 1 (Tenn. 2000), the trial court concluded that the defendant's total employment history of a two-week job, coupled with the evidence shown on the videotape of the drug buy, showed that the defendant "was trying to make a living by criminal enterprise selling crack cocaine." The court also found that the defendant had a previous history of misdemeanor convictions, and had failed to pay child support for any of his four children. See Tenn. Code Ann. § 40-35-114(1). The court did not apply any of the twelve mitigating factors submitted by the defendant. Accordingly, the court enhanced the defendant's sentence from the three-year minimum to five years.

It appears that the only enhancement factor applied by the trial court in increasing the defendant's sentence to five years was factor (1), Tenn. Code Ann. § 40-35-114(1), that the defendant had "a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range." As we have set out, the defendant had prior convictions for theft and failure to appear and, additionally, was convicted on January 20, 2000, of evading arrest, escape, and assault. Thus, the record fully supports the application of this factor.

On appeal, the defendant argues that the trial court erred by not applying, as mitigating factors, the following: less restrictive measures than incarceration had not been tried unsuccessfully with him; his conduct neither caused nor threatened serious bodily injury; his criminal history did not show a clear disregard for the laws and morals of society; he will "readily pay his costs"; he has "job skills"; his offense was nonviolent; the sale of cocaine is not among the "most severe offenses"; and his "assistance in caring and providing for his children is [ ] important to their welfare."

In its findings, the trial court stated "all of the mitigating factors that are set out in 40-35-113" had been considered. However, the trial court determined that no mitigating factors were applicable. Based upon our review, we cannot conclude that any of the mitigating factors urged on appeal were applicable.

Initially, we note that of all the factors the defendant argues should have been applied by the trial court, only the claim that his "criminal conduct neither caused nor threatened serious bodily injury," see Tenn. Code Ann. § 40-35-113(1), is specifically enumerated by statute. However, this factor is not applicable to the defendant, because his conviction was for selling crack cocaine. As our supreme court observed in State v. Ross, 49 S.W.3d 833, 848 (Tenn. 2001), regarding the application of this mitigating factor to a defendant convicted of selling cocaine, "the dangerous nature of the drug, combined with the dangerous nature of many drug transactions, may have indeed supported the trial court's rejection of this factor as constituting a threat of serious bodily injury." Accordingly, we conclude that the trial court correctly declined to apply this factor in mitigation.

As to the other claims which the defendant argues on appeal, which could be applied only through factor (13), "[a]ny other factor consistent with the purposes of this chapter," Tenn. Code Ann. § 40-35-113(13), we cannot conclude that the trial court erred by rejecting them.

At the time of his September 6, 2001, sentencing hearing in this matter, the defendant had convictions for evading arrest, escape, assault, failure to appear, and theft up to $500, and was incarcerated for the violation of probation, although the record does not reveal the disposition of that charge. Thus, contrary to the defendant's claim that his prior record is a mitigating factor, we conclude that his criminal history, in fact, "evinc[ed] a clear disregard for the laws and morals of society," see Tenn. Code Ann. § 40-35-102(5).

The defendant also argues on appeal that the trial court erred in not applying as mitigating factors that he agreed to pay "his costs," and that he had "job skills." The record clearly shows that the defendant had no job skills, interest in education, or steady employment, whether to support himself or his children. Given his unwillingness to work to support his children or even himself, we cannot conclude that he would approach his obligation to pay court costs in other than the same fashion.

The defendant also argues on appeal, as a mitigating factor, that his "assistance in caring and providing for his children is [] important to their welfare." We agree with this proposition in general when used to describe a desirable relationship between a parent and child. However, it simply cannot be applied to this defendant. He is a high school dropout, who chooses to work only sporadically, who is "cool" with the idea of having his girlfriend work to support the family, and who has no contact with his young son, whom he fathered with another girlfriend. By his own statement, he supports his children only sporadically, and pays no child support. The defendant has failed to show that his influence on his four children is other than negative. Given that, we cannot conclude that the trial court erred in not allowing the defendant to use his four children as a shield to avoid incarceration.

Thus, we conclude that enhancement factor (1) was properly applied to the sentencing of the defendant, and that no mitigating factors were applicable. Accordingly, the record supports increasing the sentence from the presumptive minimum to five years.

### III. Denial of Alternative Sentencing

The defendant argues that his sentence should "be modified to probation or community corrections." In support, he contends that the trial court erred in refusing to consider the fact that less restrictive measures than incarceration had not been tried unsuccessfully with him, saying that "he was willing to seek employment, undergo treatment and meet with and follow the rules of his probation officer if he were placed on probation or community corrections."

An especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing in the absence of evidence to the

contrary. Tenn. Code Ann. § 40-35-102(6) (1997). If an offender meets the criteria under Tennessee Code Annotated section 40-35-102(6), the trial court "must presume that he is subject to alternative sentencing." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). However, if the court is presented with "evidence sufficient to overcome the presumption, then it may sentence the defendant to confinement according to the statutory provision." Id. The presumption in favor of alternative sentencing may be overcome by facts contained in the presentence report, evidence presented by the State, the testimony of the accused or a defense witness, or any other source, provided it is made part of the record. State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996).

Evidence sufficient to overcome the presumption in favor of alternative sentencing includes evidence showing that "[c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct," "[c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses," or "[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant." Tenn. Code Ann. § 40-35-103(1)(A)-(C) (1997); see Ashby, 823 S.W.2d at 169.

Tennessee Code Annotated section 40-35-303(a) states that a defendant shall be eligible for probation, subject to certain exceptions, if the sentence imposed upon the defendant is of eight years or less. Tenn. Code Ann. § 40-35-303(a) (1997). Even if eligible, however, the defendant is not automatically entitled to probation as a matter of law. See Tenn. Code Ann. § 40-35-303(b) (1997). The burden is upon the defendant to show that he is a suitable candidate for probation. State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996); see Tenn. Code Ann. § 40-35-303(b) (1997). In order to meet this burden, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)).

There is no bright line rule for determining when a defendant should be granted probation. Bingham, 910 S.W.2d at 456. Every sentencing decision necessarily requires a case-by-case analysis. Id. Factors to be considered include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. Goode, 956 S.W.2d at 527. Another appropriate factor for a trial court to consider in determining whether to grant probation is a defendant's credibility or lack thereof, as this reflects on the defendant's potential for rehabilitation. Id.

In support of his claim that he is entitled to alternative sentencing, the defendant presents several arguments. Explaining away the probation officer's assertion that he would not succeed on probation, the defendant argues that her conclusion was based upon "one meeting with [him]." That is true. However, the reason she met only once with him is because he did not show up for the scheduled second meeting. Trying then to contact the defendant, she discovered that he had given her a non-working telephone number; and he did not respond to a business card which she left at the

address he had given to her as his residence. Such irresponsibility at a time when, presumably, the defendant would want to impress the probation officer resulted, not surprisingly, in her concluding that he was a poor risk for probation. Given the defendant's failure to provide a legitimate explanation at the hearing for these lapses, we conclude, likewise, that he would not succeed on probation.

The trial court found that the defendant's "criminal conduct in this case is done just for livelihood," citing the holding of our supreme court in Hooper:

> It is also clear that the appellee's motive in breaking the law was to profit or gain from his illegal conduct. This is certainly not a case where the appellee resorted to illegal conduct in order to feed his family or pay emergency expenses. Cf. State v. Barber, 595 S.W.2d 809, 810 (Tenn. 1980) (reversing denial of probation on deterrence grounds in part because defendant's motive for selling marijuana was "to pay his family's immediate living expenses" after being laid off from his job). To the contrary, the record indicates that the appellee admitted purchasing a truck with money from drug sales. We can divine no motive for the appellee's conduct other than greed or pecuniary gain, and we find that the trial court could rationally conclude that some deterrence may be obtained by the appellee's incarceration based on this factor.

29 S.W.3d at 12-13.

The defendant argues that this finding was erroneous and that Hooper is distinguishable on the facts. While the defendant in this matter was convicted of a single sale of crack cocaine, the proof in Hooper was that the defendant had, on two previous occasions, brought in large amounts of marijuana from New Mexico and repeatedly sold drugs. In the instant appeal, the defendant testified that he had quit his only job, not sought other employment, and allowed his girlfriend, who was the mother of three of his children, to support him, declaring this arrangement to be "cool." Therefore, we conclude that the defendant's motive for selling crack cocaine to the confidential informant was "greed or pecuniary gain." Although the defendant received only $20 for this sale, we note this was the same amount he said that he was paid for a day of cutting grass.

Additionally, the defendant assigns as error the following:

> The trial court appeared to pass moral judgment on the Defendant regarding the fact that he had fathered four children out of wedlock and did not support them and seemed to imply that, by locking him up for an extended period would result in a form of birth control for the Defendant. There is nothing in the law which justifies incarceration as a means to prevent a person from reproducing.

The defendant's brief presents this claim without making any citations to the record to support the assertion. Accordingly, the claim is waived. Tenn. Ct. Crim. App. R. 10(b); State v. Schaller, 975 S.W.2d 313, 318 (Tenn. Crim. App. 1997); State v. Turner, 919 S.W.2d 346, 358 (Tenn. Crim. App. 1995). However, our review of the record did not disclose any support for this argument. In fact, since the defendant seeks to utilize his four children to support a mitigating factor, the details of his lack of responsibility as to them is relevant. Even given this, however, the record does not support the claim that the trial court used incarceration as a means of birth control for the defendant.

It is apparent from our review of the presentence report and the transcript that the defendant, himself, terminated his chances for alternative sentencing. As the trial court observed in its findings, "I don't think that alternative sentencing is appropriate for [the defendant], especially after watching him, listening to him and seeing his attitude here in court[.]" Although we have only the record to review, the defendant's irresponsibility and lack of concern are quite evident. Even if the trial court erred in applying the rationale of Hooper, as the defendant argues, the record on appeal supports the denial of alternative sentencing. Indeed, given the defendant's growing criminal record, lack of responsibility even towards the sentencing process, and unrepentant attitude displayed at the sentencing hearing, we cannot conclude other than he would be very unlikely to abide by the requirements of any type of alternative sentencing.

Accordingly, we conclude that the trial court did not err in denying alternative sentencing to the defendant.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the sentence imposed by the trial court.

_____
ALAN E. GLENN, JUDGE